```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**CITY NATIONAL BANK,**
a National Bank Association,

    Plaintiff

v.                          CIVIL ACTION NO. 2:05-0675

**JEFFERY W. CLARK,**

    Defendant

## MEMORANDUM OPINION AND ORDER

Pending are defendant's (1) motion to dismiss, and (2) renewed motion to dismiss or, in the alternative, to transfer venue, filed respectively on October 17 and November 28, 2005.

I.

Plaintiff City National Bank ("City") is a national bank association having its principal place of business in Kanawha County, West Virginia.[1]  (Compl. ¶ 1.)  Defendant Jeffery

---

[1] The Supreme Court recently held that a national bank is "located" for diversity jurisdiction purposes in the state designated in its articles as the locus of its main office. See <u>Wachovia Bank v. Schmidt</u>, 126 S. Ct. 941, 951 (2006).  No party has challenged subject matter jurisdiction.

W. Clark is an Ohio citizen.[2]  (Id. ¶ 2).  Clark entered an employment agreement ("the Agreement") with his former employer, Classic Bank and Classic Bankshares (both referred to collectively as "Classic").  (Id. ¶ 5).  He worked for Classic in Ironton, Ohio.  (Def.'s Mot. to Dismiss at 3).  The Agreement contained, inter alia, several provisions protecting Clark in the event of a "Change in Control" affecting Classic's operations.  (Compl. ¶ 12).  At some point following the Agreement, Classic merged with City.  (Id. ¶ 8).  Clark consented to the assignment of the Agreement from Classic to City.  (Id. ¶ 9).  City contends the assignment was executed in West Virginia.  (Id. ¶ 11).

On or about July 21, 2005, Clark's lawyer sent to John Alderman, general counsel for City Holding Company[3], a letter stating Clark's intention to voluntarily terminate his employment with City "in the near future."  (Pl.'s Memo. in Oppos., ex. 5).  The letter also sought on Clark's behalf certain benefits under the Agreement as a result of the change in control from Classic to City.  (Compl. ¶ 14).  On August 2, 2005, Clark transmitted his resignation letter to Tim Quinlan, Senior Vice President of

---

[2]The complaint mistakenly spells defendant's last name as "Clarke" instead of "Clark[.]"  The style is amended to reflect the proper spelling.

[3]City Holding Company is the corporate parent of City.

City's Retail Banking division.  (Id. ¶ 17).  The letter was sent to Quinlan in Cross Lanes, West Virginia.  (Id.)

On August 18, 2005, City instituted this declaratory judgment action pursuant to 28 U.S.C. § 2201.  (Id. ¶ 4).  City contends Clark is not entitled to change-in-control benefits under the Agreement.  (Id. passim).  City initially served Clark personally at his home in Proctorville, Ohio.  (Def.'s Mot. to Dismiss at 7).  On October 17, 2005, Clark moved to dismiss.  He contends that (1) the court lacks personal jurisdiction over him, (2) service of process was insufficient because he was not served while present in West Virginia, and (3) venue is improper because the claim arose in Ohio.  (Id. at 1).

City served Clark anew on October 28, 2005, via the West Virginia Secretary of State.  (Def.'s Renew. Mot. to Dismiss at 1).[4]  On November 28, 2005, Clark moved anew to dismiss and transfer, incorporating his earlier arguments.  (Id. at 1).  He further challenged the October 28, 2005, substituted service on the grounds he is not present in West Virginia and his avoidance of any business transactions in this forum defeat substituted service.  (Id.)

---

[4]This would appear to moot that portion of Clark's insufficiency of service argument relying upon the general rule that a nonresident may be served personally only while he is physically present in the forum state.

3

Clark contends he has no contacts with West Virginia. He further asserts that (1) he is a longtime resident of Ohio, (2) he entered the Agreement there, (3) Classic was then an Ohio resident, (4) his scope of authority under the Agreement is defined solely through his prior employment with Classic, (5) he has performed all of his duties under the Agreement in Ohio, and (6) all persons with knowledge of his duties at Classic are presumably in Ohio.

City responds that the exercise of personal jurisdiction is appropriate because (1) Clark executed an assignment of the Agreement to City, a West Virginia corporation, (2) the assignment was the fruit of negotiations Clark had with City officers and employees in West Virginia, (3) by executing the assignment, Clark voluntarily became a manager of an entity headquartered in West Virginia, the locus from which he would receive instructions, (4) Clark's direct supervisor was located in West Virginia, (5) Clark sent and received business-related letters, correspondence, orders, emails, and telephone calls to and from City's West Virginia headquarters, (6) Clark attended bi-monthly City business meetings in Huntington, West Virginia, (7) Clark invoked the Agreement by transmitting the letter to Quinlan in West Virginia, and (8) Clark's salary was paid from City's West Virginia headquarters.

II.

A.   Personal Jurisdiction

1.   Governing Standard

Rule 4(k)(1)(A) authorizes the exercise of personal jurisdiction over a defendant in the manner provided by state law.  Diamond Healthcare of Ohio, Inc., v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000).  Typically, courts conduct a two-step inquiry to determine whether personal jurisdiction is appropriate, analyzing (1) whether the forum's long-arm statute authorizes service of process on the defendant, and (2) whether the service of process comports with the Due Process Clause.[5]  Elliot Machine Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).

---

[5]There are two types of personal jurisdiction.  "General jurisdiction" exists where a defendant's "systematic and continuous" contacts with the forum are such that it may be called to defend an action not related to those contacts. Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989).  "Specific jurisdiction" exists where a defendant has minimum contacts with the forum state and the action bears a sufficient nexus to those contacts.  Id.  It would appear Clark lacks the systematic and continuous contacts that would support exercise of general jurisdiction.  The court thus confines its analysis to the exercise of specific jurisdiction.

Our court of appeals has concluded that West Virginia's long arm statute is "coextensive with the full reach of due process . . . ." In re Celotex Corp.,124 F.3d 619, 627 (4th Cir. 1997) (citing Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987)).  The court, accordingly, need only determine whether the exercise of personal jurisdiction here comports with due process.[6]

The Due Process Clause protects a defendant from being haled into a foreign forum with which he has "established no meaningful 'contact, ties, or relations[.]'"  Burger King Corp.

---

[6]Nevertheless, the court will analyze the propriety of substituted service in this action.  West Virginia Code section 56-3-33(a) and its first subdivision provide pertinently as follows:

> [A] nonresident . . . [transacting any business in this state] shall be deemed equivalent to an appointment by such nonresident of the secretary of state . . . to be his . . . true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state.

W. Va. Code § 56-3-33(a).  If Clark is deemed to have transacted business within the state, the substituted service was appropriate.

v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  Due process thus requires that the defendant "have 'fair warning that a particular activity may subject [[it]] to the jurisdiction of a foreign sovereign.'"  Id.  The touchstone of due process concerns whether the nonresident defendant has sufficient minimum contacts with the forum state such that the "'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004) (quoting International Shoe Co., 326 U.S. at 316).

"Minimum contacts exist where the defendant 'purposefully direct[s]' its activities toward the residents of the forum."  Elliot Machine Corp., 995 F.2d at 477 (quoting Burger King Corp., 471 U.S. at 472).  The defendant need not be physically present in the forum.  Id. at 476.  Instead, a defendant purposefully directs it activities toward the forum "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum[.]"  Burger King, 471 U.S. at 475.  A "nonresident defendant may not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or the 'unilateral activity of another party or a third person.'"

7

<u>Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 216 (4th Cir. 2001) (citations omitted). "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." <u>English & Smith v. Metzger</u>, 901 F.2d 36, 39 (4th Cir. 1990).

With respect to interstate contractual obligations, the Supreme Court has observed that "parties who 'reach out beyond one state and create continuing obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." <u>Burger King</u>, 471 U.S. at 473. Indeed, a single contractual relationship may support the exercise of personal jurisdiction. <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 223 (1957). Standing alone, however, the mere existence of a single contract with a non-resident does not confer personal jurisdiction. <u>Burger King</u>, 471 U.S. at 478 ("[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is that it cannot.").

8

Rather, the contract relied upon must have a substantial connection to the forum state.  <u>Chung v. Nana Development Corp.</u>, 783 F.2d 1124, 1128 (4th Cir. 1986).  "The factors considered in determining whether the defendant purposefully established minimum contacts with the forum include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 479).

Minimum contacts, of course, provide a basis for personal jurisdiction "only if they satisfy the concept of 'fair play and substantial justice.'"  <u>Elliot Machine Corp.</u>, 995 F.2d at 477 (citation omitted).  In assessing the reasonableness of haling a non-resident defendant before a remote forum, our court of appeals has identified the following considerations:

> A court should consider the burden on the defendants, the interests of the forum state, and the plaintiff's interest in obtaining relief in the forum.  The court also should weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies."

<u>Federal Ins. Co.</u>, 886 F.2d at 661 (quoting <u>Asahi Metal Ind. Co., LTD. v. Superior Court</u>, 480 U.S. 102, 113 (1987)).

Finally, our court of appeals has observed that when the court, confronted with a personal jurisdiction challenge,

> addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.  In considering a challenge on such a record, the court <u>must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction</u>.

<u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989) (emphasis supplied).

### 2. Analysis

The court first examines whether Clark can be deemed to have transacted business in West Virginia for purposes of West Virginia Code section 56-3-33(a).  A variety of Clark's business-related contacts work in City's favor.  Of particular importance, however, is City's allegation that Clark executed an assignment of the Classic Agreement to City, a West Virginia corporation, in West Virginia.[7]  (Compl. ¶ 11).  Indeed, the assignment names the

---

[7] The court recognizes that Clark may at some point dispute this allegation, although such a dispute is not apparent from his filings, wherein he makes no specific denial of it.  In resolving the matter without a hearing though, the court is bound by <u>Combs</u> to construe all allegations in the light most favorable to City.

assignee as "City National Bank <u>of West Virginia</u> . . . ." (Pl.'s Resp., ex. 3) (emphasis supplied). The one-page assignment, nominally between Classic and City, provides that it "will only become effective . . . when Jeffery W. Clark consents . . . by executing this Agreement . . . ." (<u>Id.</u>) Clark could have declined to approve the sale of his services. Instead, apparently while in West Virginia, he voluntarily chose to do business with the successor entity, accepting the benefits that accrued to him as a result of his ratification. It is also important to note the assignment resulted from negotiations Clark had with City officers and employees based in West Virginia. Again, Clark could have avoided this business transaction with the non-Ohio entity. He chose otherwise. The long-arm statute is properly invoked.

The next inquiry is whether Clark had minimum contacts with West Virginia. The two contacts noted above weigh significantly in the balance. Other contacts abound. First, the execution of the assignment resulted in Clark becoming a key employee of a West Virginia entity. He executed his West Virginia employer's bidding in Ohio, as required by the assignment and the Agreement. (<u>See</u>, <u>e.g.</u>, Agreement ¶ 1 (requiring Clark to "perform such duties as are requested by

11

management and the Board of Directors or are customarily performed by persons situated in a similar executive capacity."). Second, and of great significance, Clark voluntarily sent to, and received from, City's West Virginia headquarters certain business-related letters, memoranda, emails, and telephone calls. Third, Clark attended bi-monthly City business meetings in Huntington, West Virginia.  In doing so, he, physically appeared in the forum on a regular basis, discharged his obligations under the assignment and the Agreement, and deliberately exercised the privilege of undertaking contractual obligations in this state. Fourth, Clark's August 2, 2005, letter, the likely progenitor of this action, was deliberately sent by him to a City senior vice president in West Virginia.

In *Burger King*, the Supreme Court observed pertinently as follows:

> It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King*, 471 U.S. at 479.  The assignment, and the Agreement's obligations and entitlements that resulted from it, were the product of Ohio-West Virginia negotiations.  Those same documents contemplated future consequences, as borne out by the

12

parties' Ohio-West Virginia course of dealing over a period of two months.  Clark engaged in significant, meaningful contacts with this forum.

The third and final inquiry involves whether the exercise of jurisdiction comports with fair play and substantial justice.  Looking to the applicable factors, the court first notes the burden on Clark in defending here would be minimal.  He resides in the neighboring state of Ohio and there is no indication he cannot travel here on the few occasions where his presence might be required.  He has already retained counsel resident in Charleston.

Next, the forum's interest in resolving this dispute is admittedly not as substantial as it otherwise might be if the Agreement was governed by West Virginia law.[8]  Nevertheless, City is being called upon to pay a disputed debt to one seeking to exact a sum from its corporate treasury.  This state yet has a considerable interest in "adjudicati[on] . . . insofar as it seeks to ensure the economic health of its citizens and the fair resolution of their disputes."  Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 479 (4th Cir. 1993).

---

[8]The Agreement is governed by Kentucky, not Ohio, law.

City's interest in having the dispute resolved here is thus of some significance.

None of the remaining factors weigh heavily in either direction.  Based upon the foregoing, the court concludes City has made a prima facie showing Clark purposefully availed himself of this forum, that he had sufficient contacts here, and that subjecting Clark to suit in West Virginia does not contravene traditional notions of fair play and substantial justice.  The contacts here relate to the declaratory judgment claim and create a substantial connection with this state.  The court, accordingly, ORDERS that defendant's motion and amended motion to dismiss for lack of personal jurisdiction be, and they hereby are, denied.[9]

---

[9] Clark relies principally on Diamond.  A host of factors distinguish this action from that case.  For example, the primary, post-negotiation contact defendant had with plaintiff in Diamond was "'the occasional payment mailed'" by defendant to plaintiff.  Id. at 450 (quoting district court opinion).  As noted, Clark regularly visited this state and executed orders from this state on behalf of City.  Clark's activities here rather plainly eclipse the "'attenuated contact'" present in Diamond.  Id. at 452 (quoted authority omitted).  The court also notes the spirited dissent of Judge Luttig, who opined that the majority opinion "directly conflict[ed]" with Burger King.  Id. at 453 (Luttig, J. dissenting).

14

B.   Venue

1.   Dismissal

Title 28 U.S.C. § 1391(a) provides pertinently as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

28 U.S.C. § 1391(a).  Our court of appeals recently discussed the proper scope of the inquiry:

> To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue.
>
>     . . . .
>
> [I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action.  Rather, it should review "the entire sequence of events underlying the claim."

See Mitrano, 377 F.3d at 405.

In view of Clark's employment in Ohio and the day-to-day performance of his duties there, venue would likely be proper in the Southern District of Ohio.  That is not to say, however, that the Southern District of West Virginia cannot also serve as

15

a venue-giving forum.  Many of the contacts recounted in the foregoing section lead to just such a finding.  Other facts lend further support.  For example, Clark was compensated under section 3(a) of the Agreement by checks City generated in Cross Lanes.  Any payment of change-in-control benefits would presumably originate from the same locus.  Further, Clark asserts the primary reason for his voluntary departure was the "loss of significant authority under section 5(b) of" the Agreement.  As noted by City:

> [A]ny loss of Mr. Clark's significant authoirty would have had to be the result of management decisions which had to be made in West Virginia, either through Mr. Clark's direct supervisor, Mr. Bowen (who is located in Huntington, West Virginia) or from CNB headquarters located in Cross Lanes . . . .

(Pl.'s Memo. in Opp. at 10).

Inasmuch as a substantial part of the events giving rise to plaintiff's claim occurred in West Virginia, the court ORDERS that defendant's alternative motion to dismiss and amended motion to dismiss for improper venue be, and they hereby are, denied.

### 2. Transfer

Although transfer under section 1406 would be inappropriate given venue is proper in West Virginia, the court

16

may, for the convenience of the parties and in the interest of justice, transfer the case to the Southern District of Ohio. 28 U.S.C. § 1404(a). Such a transfer, however, is dependent upon the "weigh[ing] . . . [of] a number of case-specific factors." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." AFA Enters., Inc. v. American States Ins. Co., 842 F. Supp. 902, 909 (S.D. W. Va. 1994). The plaintiff's forum selection is accorded considerable weight. Id.; Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Additionally, "transfer . . . will be denied if it would merely shift the inconvenience from the defendant to the plaintiff." AFA, 842 F. Supp. at 909.

Regarding ease of access to sources of proof, it would appear that a key question in the case is whether Clark lost a

17

significant amount of authority as a result of the change in control.  Sources of proof on this issue appear to exist in both Ohio, where Clark's fellow employee are located, and West Virginia, where the decisions regarding his work responsibilities were made.

Regarding the convenience of parties and witnesses, Clark has not identified any potential deponents, much less the inconvenience those putative individuals would suffer as a result of transfer.  Further, it does not appear that this case involves much in the way of documentary evidence that would pose transport problems.  On the other hand, it appears a certainty that City officers and employees in West Virginia who were responsible for any diminution in his authority are likely in this forum and would be required to travel to the Southern District of Ohio if transfer occurs.

Regarding the cost of obtaining witness attendance, the court notes there is not a great distance between the bordering districts.  Further, compulsory process appears to be available.  Federal Rule of Civil Procedure 45(b)(2) provides pertinently as follows:

> Subject to the provisions of . . . [subdivision (c)(3)(A)(ii)] . . . a subpoena may be served . . . at any place without the district that is within 100 miles of the place of the deposition, hearing, trial,

>  production, or inspection specified in the subpoena . . . .

Fed. R. Civ. P. 45(b)(2).[10]  Clark, and perhaps some of those whom he will seek to call as witnesses, resides in Proctorville, Ohio, a city located approximately fifty (50) miles from Charleston.  Further, a view does not appear to be necessary.

Inasmuch as the remaining factors do not weigh heavily either way, the court concludes transfer is inappropriate.  The balance does not weigh strongly in Clark's favor, and transfer would merely shift the minimal inconvenience he faces to City.  The court, accordingly, ORDERS that the alternative motion and amended motion to transfer venue be, and they hereby are, denied.

---

[10]Rule 45(c)(3)(A)(ii) provides that the issuing court must quash or modify a subpoena if it:

> requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held . . . .

Fed. R. 45(c)(3)(A)(ii).

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: February 23, 2006

John T. Copenhaver, Jr.
United States District Judge