```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

**CITY NATIONAL BANK,**
a National Bank Association,

    Plaintiff

v.                        CIVIL ACTION NO. 2:05-0675

**JEFFERY W. CLARK,**

    Defendant

### MEMORANDUM OPINION AND ORDER

Pending are plaintiff City National Bank's ("City") motion for summary judgment, filed July 7, 2006, and defendant Jeffery W. Clark's motion for an expedited modification of the scheduling order, filed July 13, 2006.

I.

On December 6, 2005, City filed its Federal Rule of Civil Procedure 26(a)(1) disclosures, naming as potential witnesses Tim Quinlan, its Senior Vice President, and Carl E. Bowen, its Executive Vice President and Regional Manager.  On December 15, 2005, the court entered its scheduling order, setting deadlines for, <u>inter</u> <u>alia</u>, the completion of discovery, June 16, 2006, and the filing of dispositive motions, July 7, 2006.

On January 3, 2006, City filed a certificate of service for certain written discovery it requested from Clark. Clark responded to the request on February 6, 2006. Discovery then all but ceased in the case for the next three months, culminating apparently in late May with discussions among counsel for City, Ancil Ramey, and counsel for Clark at the time, Gerard "Gerry" Stowers, concerning the necessary examinations of certain deponents.

Clark agreed to appear for his deposition on June 13, 2006, three days prior to the discovery deadline. A memo to the file from Mr. Stowers notes this putative agreement, along with the fact that Mr. Ramey was "asked . . for [deposition] dates for . . . Quinlan and Craig Steelwell," along with Mr. Ramey's additional, alleged promise "to check to see if they are available on June 13, 2006." (Def.'s Mot., ex. A). Following counsel's discussions, Mr. Ramey noticed for June 13, 2006, the depositions of three individuals, namely, Clark (9:00 a.m.), Ray Dutey (1:00 p.m.), and Stephen Burcham (4:00 p.m.).

Mr. Ramey denies an agreement to schedule any depositions of City officials on that same date. In contrast, Ken Webb, who had since taken over the case for Mr. Stowers, asserts that "[d]uring these early inquiries, Plaintiff's counsel

repeatedly promised to provide deposition dates for Plaintiff's representatives, failed to do so and never complained that the depositions had to take place before June 16, 2006."[1]  (Def.'s Mot. at 1).

At the June 13, 2006, depositions, Mr. Webb contends he inquired again with Mr. Ramey about deposition dates for Quinlan, Steelwell, and, apparently for the first time, Bowen.  Mr. Webb asserts his counterpart agreed to confer with the deponents and provide suitable dates.  Mr. Ramey, however, responds that it was Mr. Webb who agreed to provide the dates to Mr. Ramey, who then promised he would attempt to accommodate Mr. Webb.

Mr. Webb asserts that, following Mr. Ramey's putative promise to provide deposition dates, no proposed dates were forthcoming.  On June 22, 2006, Mr. Webb's legal secretary, Gretchen Cavender, supported by her sworn affidavit, telephoned Mr. Ramey for the deposition dates.  According to Cavender, Mr. Ramey at that time "confirmed his conversations with [defendant's counsel] at the defendant's deposition the prior week . . . ." (<u>Id.</u>, Ex. C, Aff. of Gretchen Cavender).  Cavender asserts that Mr. Ramey additionally stated he was concerned about the dispositive motions deadline but, according to the affidavit,

---

[1] This change in counsel appears to have contributed to the present misunderstanding.

"that he would inquire of the witnesses and get back with" Cavender.  (Id.)  Mr. Ramey contends Cavender requested dates in mid-July, to which he responded that the discovery deadline had already passed.  He surmises that "he may have informed her that he would inquire as to whether the witnesses could be produced prior to the dispositive motions deadline as requested."  (Pl.'s Resp. at 4 n.4).  Mr. Webb contends no response was forthcoming.

On June 27, 2006, Cavender sent Mr. Ramey an e-mail to remind him about the promised dates.  Mr. Ramey responded on June 28, 2006, stating that he "hope[d] to hear something and get back with" her that very day.  (Id., ex. B).  At 3:48 p.m. that day, Mr. Ramey responded again, stating as follows:

> Because of the July 4th holiday and vacations, we are unable to provide dates for deposition of these individuals prior to the date that dispositive motions are due.
>
> The discovery cutoff was June 16th and, for whatever reason, Mr. Stowers never noticed any depositions prior to the discovery cutoff.
>
> I have tried to be accommodating, but the delay in seeking these depositions have precluded their scheduling prior to either the discovery cutoff or the dispositive motions deadline.

(Id.)[2]

---

[2]So as not to interrupt the flow of the text in these apparently hastily drafted electronic messages, the court has
(continued...)

Mr. Webb's reply, sent the same day, stated pertinently as follows:

> There has been no delay in seeking the depositions and YOU certainly have not tried to or actually been accommodating. Gerry [Stowers] asked YOU for dates early on when YOU inquired about Mr. Clark's deposition. YOU promised to check with YOUR witnesses and get Gerry some dates. YOU did not get back to Gerry. I made the same inquiry of YOU at the conclusion of Mr. Clark's deposition and again YOU promised to get me dates. You did not get back to me. I had my secretary follow-up and YOU promised to get her some dates. The e-mail at the beginning of this chain is a further effort from my secretary to follow-up on YOUR promise to provide dates. Instead of getting us dates -- like YOU repeatedly promised to do -- YOU drug your feet and now apparently refuse to produce anyone for deposition. If YOU had no intent of providing the dates, why did YOU promise to do so? If I do not have deposition dates from you by CLOSE OF BUSINESS TODAY, I will pick dates and notice the depositions.

(Id.)

Mr. Ramey's sur-reply, also sent the same day, reads as follows:

> Gerry never noticed any depositions.
>
> When your secretary initially contacted me, she gave me dates in late July, well after the dispositive motions deadline. I pointed out to her that the dates she provided were well after the deadline and she mentioned July 5th as a possible date. Unfortunately, the

---

²(...continued)
avoided noting the existence of misspellings or grammatical anomalies by use of "[sic]" notations.

> lateness of the request and holiday and vacation schedules do not permit the production of witnesses on that date.
>
> I never indicated any agreement to waive or extend the scheduling order.
>
> If any depositions are noticed, accordingly, I will seek a protective order from the Court.
>
> If you want to amend the scheduling order, I will take any proposal to my client for its consideration, but we are simply unable to accommodate your request that these witnesses be produced on July 5th.

(*Id.*)

On June 29, 2006, at 8:19 a.m., Mr. Webb sent the next salvo in the exchange:

> We made timely and repeated requests for dates when representatives of your client -- who are party representatives -- could sit for a deposition. You promised to get us dates when these individuals were available for deposition. You promised to provide dates before the discovery cut-off and after the discovery cut-off. You welched on your promise and never gave us any dates. When we followed-up -- both before and after the discovery cut-off, you continued to promise that you would confer with the deponents and get us dates. It appears to us that you only recently conferred with the deponents -- apparently within the last couple of days and only after my secretary's repeated badgering -- and only now complain for the first time that setting depositions will interfere with vacations and dispositive motions deadlines. Ancil, we asked you to get us dates so we could avoid conflicts. For some reason unknown to us you repeatedly assure us you would get us dates but never did. Now you say it is our fault. Our fault for what? -- our fault for trusting you? Were you trying to create the situation you're now in? plan on noticing the depositions (today) for July 7 in my offices. I don't have a

6

> problem modifying the dispositive motions deadline to
> accommodate depositions of your client's
> representatives but I need a commitment from you as to
> when the depositions will take place so we know how far
> out to move the dispositive motions deadlines. Given
> your behavior thus far, I have no confidence that you
> will follow through on what you propose below. The
> Standards of Professional Conduct, promulgated by the
> Supreme Court shortly after you left as Clerk . . . and
> our profession demand that lawyers behave with civility
> and extend courtesy which includes adhering to promises
> to make folks available for deposition.

(<u>Id.</u>)

       Mr. Ramey curtly advised by return e-mail that he was unavailable on July 7. (<u>Id.</u>) Webb requested that another attorney with Mr. Ramey's firm cover the depositions. (<u>Id.</u>) Mr. Ramey suggested "[n]o one else has had much involvement in the case." (<u>Id.</u>) Between 9:21 and 9:22 a.m. that same day, Mr. Webb noticed the Bowen, Quinlan, and Steelwell depositions for July 7, 2006. Later that afternoon Mr. Ramey, apparently attaching a motion for a protective order filed electronically just moments before, advised Mr. Webb "The circumstances left me little choice but to file the attached. I can't be in two places at once and without general counsel available." (<u>Id.</u>)

       Mr. Webb then sent the final message in the e-mail string:

> THAT'S WHY WE ASKED FOR SOME DATES! Your repeated
> failure to provide dates after promising at various

> times before and after the discovery cut-off to give us acceptable dates, left me with little choice but to notice the depositions. Scott Johnson appears on the pleadings with you, why can't he cover the depositions. Filing the motion for protective order was not your only choice. You could have given (and can still give) me a date when you, your witnesses and your general counsel are available (like you promised). I'm willing to do the depositions on a Saturday or in the evening. Will you check and see if that works for your folks.
>
> Pending some agreed to solution, I'll respond to the motion, see you at the hearing and prepare for the 7th.

(<u>Id.</u>)

On July 12, 2006, the magistrate judge granted the protective order, stating as follows:

> The docket sheet reveals that Defendant did not notice any depositions until June 29, 2006, well after the June 16, 2006 discovery deadline. (Docket ## 37, 38, 39; 18.) According to its own submissions, Defendant's earliest attempt to secure deposition dates occurred on May 31, 2006, perilously close to this deadline. (Docket # 41, Exhibit A.)
>
> The original Complaint herein was filed on August 18, 2005. (Docket # 1.) Thus, Defendant had months upon months to conduct discovery, yet pursued absolutely none until the eve of the June 16 deadline. Having made that choice, Defendant cannot rightfully complain against Plaintiff for failing to produce its witnesses within a two-week time frame at the end of discovery, or for refusing an agreement to extend the deadline. Defendant argues that Plaintiff's counsel led him to believe the deponents would be produced, and then failed to provide dates. (Docket # 41, p. 2-3.)
>
> However, even taking each of Defendant's allegations as true, these do not change the fact that it was Defendant's own lack of diligence which created the deadline predicament. Strangely, while the parties

8

>  discussed modifying the dispositive motions deadline,
>  they never moved to do so. (Docket # 41, Exhibit C, p.
>  6-7.)  Nor did Defendant move to extend the discovery
>  deadline.  Either of these requests, if granted by the
>  presiding District Judge, would have alleviated the
>  current situation.  However, as the docket stands now,
>  and for reasons above, the court finds Plaintiff's
>  motion well-founded. The court hereby GRANTS
>  Plaintiff's Motion for Protective Order (docket # 40)
>  and ORDERS that the deposition notices be STRICKEN
>  WITHOUT PREJUDICE.

City Nat'l Bank v. Clark, No. 2:05-0675, slip op. at 3-4 (S.D. W. Va. Jul. 12, 2006).

On July 13, 2006, Clark moved for an expedited modification of the scheduling order.  The motion recounts the foregoing circumstances and contends that they justify a finding of good cause necessary to support a modification of the scheduling order.  City responds (1) that Clark did not diligently engage in discovery and now cannot demonstrate good cause for his failure to do so, and (2) the depositions are not necessary in order for Clark to respond to the pending dispositive motion.[3]

Clark replies first that little formal discovery was required of either party because of the nature of this action, "a

---

[3] City appears to suggest Rule 56(f) is relevant to the inquiry.  As noted below, however, the court concludes Rule 16(b) is the provision principally applicable to the precise relief here sought, a modification of the scheduling order.

relatively straight forward dispute about whether the terms of a golden parachute provision in an employment contract were triggered by Plaintiff's conduct."  (Pl.'s Reply at 1).  Second, Clark contends the standard practice in this district is to secure agreed dates prior to noticing depositions in order to avoid costly re-scheduling and motion practice.

## II.

Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."  Fed. R. Civ. P. 16(b).  The focus of the good cause standard centers upon the movant's diligence.

The court observes that both parties waited until late in the discovery process to take the necessary depositions in this case.  Clark has three depositions to conclude.  Although City examined its deponents successfully, they all came in under the wire, just 72 hours prior to the expiration of the discovery deadline.  Both sides had six months to attend to this most important factual development.

As the foregoing factual discussion indicates, both sides waited much too long to begin the oral discovery process. As a result, they were then both hard-pressed to conclude the process within the allotted time frame.[4]

According both lawyers the benefit of the doubt in the midst of this unpleasant exchange, the present discovery controversy is attributable to dilatory action on both sides and apparent misunderstandings of the opponent's intentions and responsibilities.  But mixed with this measure of tardiness is a corresponding indication of diligence represented by Mr. Webb's rather determined, and documented, efforts to pin Mr. Ramey down on deposition dates both prior to, and following, passage of the discovery deadline.

---

[4]The court notes it is all too often the case that parties will engage in discovery even after the briefing begins on their summary judgment motions.  Such a practice leaves the court with an incomplete factual record upon which to resolve these potentially case-dispositive motions.  This results in the court being presented with legal and factual arguments first asserted in reply briefs or, instead, raised for the first time on appeal.  Neither practice comports with the purpose of the Federal Rules of Civil Procedure, namely, the just, speedy, and inexpensive determination of every action.  Fed. R. Civ. P. 1.  In this very case, as a result of the pending discovery dispute, the court has pending a dispositive motion that may be substantially impacted by discovery not yet undertaken.

Although it is by no means compelled on this record, the court finds that, as a result of their respective misunderstandings, and Mr. Webb's persistent attempts to have the depositions scheduled, good cause supports the requested scheduling order modification. The client, Mr. Clark, has been unfairly deprived of his ability to fully discover the case. From a pragmatic perspective, a contrary finding portends final judgment possibly being entered in favor of City as a result of Clark's inability to develop facts favorable to his theory of the case. In view of the parties' sharply divergent views of how this unfortunate series of events came to pass, bringing discovery to a close at this time would achieve no purpose other than to allow City to pursue its theory of the case without the court having the benefit of the adversarial process. As noted, such a result would offend the very first command in the Rule book. <u>See</u> Fed. R. Civ. P. 1 (stating, in pertinent part, that the Rules "shall be construed and administered to secure the just . . . determination of every action").

The court, accordingly, ORDERS that Clark's motion for an expedited modification of the scheduling order be, and it hereby is, granted. The court will enter a revised scheduling order forthwith. Although 60 days will be allotted to conclude

discovery, allowing for the scheduling and taking of the depositions along with the preparation of transcripts, the court expects both sides to cooperate toward the end of completing the examinations long before that period elapses.  In order to allow for a full set of briefing to account for this additional factual development, the court further ORDERS that City's motion for summary judgment be, and it hereby is, denied without prejudice as being premature.  The motion may be filed anew in accordance with the forthcoming revised scheduling order.

       The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

                              DATED: July 28, 2006

                              John T. Copenhaver, Jr.
                              United States District Judge